UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


KONSTANTIN BURNASHOV,
     Plaintiff,


      v.                                    CIVIL ACTION NO.
                                       11-11266-MBB


F/V OCEANVIEW, INC.
and
TMT CLAM DREDGERS, LLC,
     Defendants and
     Third Party Plaintiffs,


      v.


UNITED STATES OF AMERICA,
     Third Party Defendant.


**MEMORANDUM AND ORDER RE:**
**THIRD PARTY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
**(DOCKET ENTRY # 50)**

**October 15, 2013**

**BOWLER, U.S.M.J.**

Plaintiff Konstantin Burnashov ("plaintiff") brought this
suit against defendant F/V Oceanview, Inc. ("Oceanview") on July
19, 2011.  Thereafter, Oceanview filed a third party complaint
against the United States ("United States" or "the government")
pursuant to Rule 14, Fed.R.Civ.P. ("Rule 14"), asserting
liability against the United States under the Federal Tort

Claims Act, 28 U.S.C. § 1346 ("FTCA").  (Docket Entry # 8).  The third party complaint sets out the following three claims against the United States:  (1) contribution based on the government's negligence; (2) indemnity based on the government's negligence; and (3) negligence.  On April 4, 2013, the United States filed a motion for summary judgment against Oceanview.  (Docket Entry # 50).  Oceanview opposes summary judgment.  (Docket Entry # 54).  On July 17, 2013, this court held a hearing and took the summary judgment motion (Docket Entry # 50) under advisement.

## STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'"  Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007).  It is appropriate when the summary judgment record shows "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law."  Rule 56(c), Fed.R.Civ.P.  "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party."  American Steel Erectors, Inc. v. Local Union No. 7, International Association of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008).  "A fact is material if it carries with it

the potential to affect the outcome of the suit under the applicable law."  Id.

Facts are viewed in favor of the non-movant, i.e., Oceanview.  Noonan v. Staples, Inc., 556 F.3d 20, 23 (1st Cir. 2009).  "Where, as here, the nonmovant has the burden of proof and the evidence on one or more of the critical issues in the case is not significantly probative, summary judgment may be granted."  Davila, 498 F.3d at 12 (internal quotation marks, citation and ellipses omitted); accord Clifford v. Barnhart, 449 F.3d 276, 280 (1st Cir. 2006) (if moving party makes preliminary showing, nonmoving party must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue" with respect to each element on which he "would bear the burden of proof at trial") (internal quotation marks and citations omitted).

Oceanview submits a LR. 56.1 statement of undisputed facts. Uncontroverted statements of fact in the LR. 56.1 statement comprise part of the summary judgment record.  See Cochran v. Quest Software, Inc., 328 F.3d 1, 12 (1st Cir. 2003) (the plaintiff's failure to contest date in LR. 56.1 statement of material facts caused date to be admitted on summary judgment); Stonkus v. City of Brockton School Department, 322 F.3d 97, 102 (1st Cir. 2003) (citing LR. 56.1 and deeming admitted undisputed material facts that the plaintiff failed to controvert).

FACTUAL BACKGROUND

Burnashov worked as a deckhand and crewmember on the F/V ESS Pursuit ("the ESS Pursuit"), a clam dredging boat owned by Oceanview.  On June 6, 2010, the ESS Pursuit recovered several canisters while in the course of business that contained sulfur mustard, a blister agent used during World War I.  (Docket Entry # 50-1).  Burnashov was working on "the sprayer/shaker" on the ESS Pursuit 46 miles south of Long Island, New York, when chemical munitions were discovered during the course of fishing. (Docket Entry # 50-4).  The ESS Pursuit was in an unrestricted clamming area during the incident where there were no prohibitions on fishing vessels because of known safety concerns.  (Docket Entry ## 56-1 & 54-7).

Several methods are used to dredge for clams.  In this instance, portions of the ocean floor are scraped into cages then sorted on a boat.  (Docket Entry # 59-3).  While clams are found and set aside, other miscellaneous items from the ocean are also picked up in the process.  (Docket Entry # 54-8).  This can include benign items such as garbage but also disposed war munitions.  On June 6, 2010, plaintiff discovered eight to ten mustard gas canisters.  Plaintiff was exposed to the munitions for approximately 30 minutes while disposing of the canisters by throwing them overboard.  (Docket Entry # 54-2).  When plaintiff reported the munitions onboard the vessel while sorting clams,

4

Captain Kieran Kelly told plaintiff to throw the canisters overboard.  (Docket Entry # 54-2).  Plaintiff also reported liquid leaking out of the ordnance that contacted plaintiff, who was wearing boots, a rubber bib, a rubber coat, gloves and clear glasses.  (Docket Entry # 54-2).

Mustard gas chemically burns skin that it contacts. (Docket Entry # 54-5).  It was widely used in World War I as a weapon.  (Docket Entry # 54-5).  After the war, disposal of large quantities of war munitions became a concern.  (Docket Entry # 54-5).  Among the disposal methods, sea disposal became a popular way of disposing of mustard gas canisters.  (Docket Entry # 50-7, p. 16).  The effects of mustard gas contact can be mild or severe in nature.  (Docket Entry # 54-18).  The effects of mustard gas poisoning are delayed and do not appear until several hours after initial contact.  (Docket Entry # 54-18). Plaintiff reported blisters on his hands after contact with the ordnance.  (Docket Entry # 59-3, p. 11).  Once the incident was reported to the Coast Guard, the ESS Pursuit returned to port in New Bedford, Massachusetts.  (Docket Entry # 54-15). Subsequently, plaintiff was taken to the hospital where he was treated for burns and blisters.  (Docket Entry # 54-15).  The boat was quarantined and decontaminated and the catch was destroyed.  (Docket Entry # 50-2).

## DISCUSSION

The United States seeks summary judgment on the basis of the discretionary function exception.  See 28 U.S.C. § 2860(a). The Federal Torts Claims Act, 28 U.S.C. § 1346 ("FTCA"), provides a limited number of exceptions to sovereign immunity that allow a party to successfully bring a tort claim against the government.  "The FTCA represents a general waiver of federal sovereign immunity for tortious acts and omissions of federal employees.  But that general waiver is subject to a litany of exceptions."  Limone v. United States, 579 F.3d 79, 88 (1st Cir. 2009).  In addition, "As with all waivers of sovereign immunity, the FTCA must be 'construed strictly in favor of the federal government, and must not be enlarged beyond such boundaries as its language plainly requires.'"  Bolduc v. United States, 402 F.3d 50, 56 (1st Cir. 2005) (quoting United States v. Horn, 29 F.3d 754, 762 (1st Cir. 1994)).

One of the exceptions to the FTCA is the discretionary function provision.  28 U.S.C. § 2860(a).  A twofold test determines whether the discretionary function exception applies. Berkovitz v. United States, 486 U.S. 531, 536 (1988).  First, the court must ascertain "if the conduct involves an element of judgment or choice" for the government.  Id.  If the first prong is met, then the court must analyze "whether that judgment or choice was susceptible to policy-related analysis."  Id.  The discretionary function exception therefore "applies if the

conduct underlying an FTCA claim both (1) involves an element of judgment or choice, and (2) was susceptible to policy-related analysis." Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86, 93 (1st Cir. 2012) (quoting Limone v. United States, 579 F.3d at 101) (quoting Berkovitz, 486 U.S. at 536) (citations and internal quotation marks omitted).

A.   Discretionary Activity

In seeking summary judgment, the United States argues that the discretionary function exception to the FTCA bars the negligence claims against the government in the third party complaint.  In particular, the United States maintains that Oceanview's argument for liability implicates the Government's protected decisions regarding the disposal and tracking of munitions and distribution of literature.  These discretionary decisions fall under the discretionary function exception to the FTCA, according to the United States.

Liability under the FTCA is subject to exceptions laid out in 28 U.S.C. § 2860, which include the discretionary function exception.  The exception bars liability against the United States for:

> Any claim based upon an act or omission of an employee of
> the Government, exercising due care, in the execution of a
> statute or regulation, whether or not such statute or
> regulation be valid, or based upon the exercise or
> performance or the failure to exercise or perform a
> discretionary function or duty on the part of a federal

agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).  There is no liability for an absence "of due care in promulgating a policy, or in having no policy or program at all on an issue, however imprudent it might seem" as it is covered within "the discretionary function exception." Shuman v. United States, 765 F.2d 283, 290 (1st Cir. 1985) (internal citations omitted).  It is not enough for plaintiff to identify a statute relating to the claim.  Kelly v. United States, 924 F.2d 355, 360 (1st Cir. 1991) (holding that the discretionary function exception applies when statutory language "interweave[es] imperatives with weaker, precatory verbs and generalities more characteristic of discretion than of mandatory directives").  Instead, there must be specific directions that were violated.  See Daigle v. Shell Oil Co., 972 F.2d 1527, 1540 (10th Cir. 1992) ("question is not whether the Army fell short in its efforts . . . but whether the Army's shortcomings involved violations of specific, mandatory directives").

Oceanview maintains the United States violated mandatory directives under the John Warner National Defense Authorization Act for Fiscal Year 2007, Pub.L. No. 109-364, § 547, 120 Stat.2083 (2006) ("John Warner Defense Act") and the Department of Defense Manual ("DOD Manual").  Specifically, Oceanview claims that the United States violated the John Warner Defense

Act by failing inform fishing operations of the possibility of contact with military munitions.  (Docket Entry # 54). Additionally, Oceanview submits that the United States failed to update nautical charts and other materials, which would have identified hazards to fishing operations.  (Docket Entry # 54).

In the case at bar, the United States did not violate mandatory directives through its protected discretionary activity.  The documents proffered by Oceanview do not meet the standard of mandatory directives that would lead to liability on behalf of the United States.  Courts should look "first to statutes, regulations and agency guidelines as competent sources for determining established government policy."  Wood v. United States, 290 F.3d 29, 36 (1st Cir. 2002).  The John Warner Defense Act sets a goal whereas a mandatory directive is "unambiguous" and "define[s] the proper level of conduct."  Irving v. United States, 162 F.3d 154, 165 (1st Cir. 1998).  The language in section 313 of the statute itself refers to the tracking and mitigation of disposed munitions as "Performance Goals for Remediation."  To be considered a directive instead of a goal for purposes of the discretionary function exception, there must be "a specific mandatory directive that the defendant had a clear duty under federal law to perform and, subsequently, failed to perform."  Sanchez v. United States, 707 F.Supp.2d 216, 226 (D.P.R. 2010) (quotation marks and brackets omitted).

The documents cited by Oceanview, such as the nautical charts and DOD Manual, are not mandatory directives.  "Because a mariner cannot reasonably rely solely on a chart, nautical charts do not induce reliance such that the government has a duty to ensure their accuracy, especially where the government specifically directs mariners to other publications through warnings or cautions on the chart itself."  Limar Shipping Ltd. v. United States, 324 F.3d 1, 11 (1st Cir. 2003).  Additionally, the DOD Manual cited by Oceanview as a mandatory directive does not apply because disposed munitions, such as mustard gas canisters, are no longer property of the Government.  (Docket Entry # 56-4).

B.   Policy Related Judgments

Under the second step, the court must consider whether the activity is "of the type and kind that Congress sought to safeguard through the discretionary function exception." Fothergill v. United States, 566 F.3d 248, 253 (1st Cir. 2009). The government does not have to show that a purposeful policy judgment was actually made.  Id.  "The discretionary function exception applies to all acts and omissions that are susceptible to policy analysis, whether or not that analysis has been performed on a given occasion."  Id.  Congress enacted the discretionary function exception intending to "'prevent judicial "second-guessing" of legislative and administrative decisions

grounded in social, economic, and political policy through the medium of an action in tort.'" <u>Abreu v. United States</u>, 468 F.3d 20, 25 (1st Cir. 2006) (quoting <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense</u>, 467 U.S. 797, 814 (1984)).

The John Warner Defense Act and the DOD Manual are not mandatory directives because they relate to "policy decisions rather than mandating a specific course of conduct." <u>Francis v. United States</u>, 2013 WL 1352384, at *3 (D.P.R. Apr. 3, 2013). The disposal of war munitions is the type of decision that the discretionary function exception aims to cover. The decisions concerning whether and how to warn fishing operations of potential munitions are policy concerns. "We also perceive that there is a particularly strong argument for limiting the rule of <u>Gaubert</u>[1] where the exercise of military authority is involved, in view of the numerous cases cautioning the courts to avoid interfering with the exercise of discretionary military authority." <u>Abreu v. United States</u>, 468 F.3d at 27-28.

The decision to mark munitions dumping grounds encompasses discretionary conduct protected by policy considerations. <u>See, e.g.</u>, <u>Loughlin v. United States</u>, 286 F.Supp.2d 1, 23 (D.D.C. 2003) ("Army's decision not to issue warnings at the time that

---

[1]  The court in <u>Abreu</u> discussed <u>Gaubert v. United States</u>, 499 U.S. 315, 323-24 (1991), insofar as it established that, "The discretionary function exception does not shield the conduct of an employee who violates a mandatory regulation." <u>Abreu v. United States</u>, 468 F.3d at 27.

it buried the munitions at AUES implicates the very kind of

policy judgments that warrant protection under § 268(a)").

"[D]ecisions about what kind of warning to issue, what to say

about the dangers that could result from the burials, would have

involved an additional element of discretion, because the safety

issues that the military would have had to consider were, at

best, speculative and ill-defined."  Id. at 24.  Moreover,

because the mustard gas canisters were dumped approximately a

century ago without proper documentation, the current location

of disposed munitions cannot be plotted with accuracy.  (Docket

Entry # 56-3).  This could create a hazard by misinforming

fishing vessels by roughly plotting disposal sites and giving

vessels a false sense of security.  The Government has valid

policy concerns ensuring that any marked disposal sites are

accurate and precise because "actions of Government agents

involving the necessary element of choice and grounded in the

social, economic, or political goals of the statute and

regulations are protected."  United States v. Gaubert, 499 U.S.

at 323.  Decisions regarding disposal of munitions involve

"competing concerns of secrecy and safety, national security and

public health."  Loughlin v. United States, 393 F.3d 155, 164

(D.C.Cir. 2004) (internal citation omitted).

     In sum, the discretionary function exception applies.  The

conduct at issue can fairly be described as discretionary and it

was not policy driven.  Accordingly, the government is immune
from suit and the claims in the third party complaint (Docket
Entry # 8) against the United States are subject to dismissal
for lack of subject matter jurisdiction.  See Sanchez ex rel.
D.R.-S. v. United States 671 F.3d at 92-93 (if "discretionary
function exception applies, the FTCA's jurisdictional grant
under 28 U.S.C. § 1346(b) does not, such that . . . the claim
must be dismissed for lack of subject matter jurisdiction")
(citations, internal quotation marks and brackets omitted).
Likewise, there is no liability against the United States under
Rule 14(c)(2) with respect to plaintiff's claims.

CONCLUSION

For the foregoing reasons, the motion for summary judgment
(Docket Entry # 50) is **ALLOWED.**


/s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge